UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ANTHONY CURTIS MOORE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Case No. 4:10CV1107 JCH |
| | ) | |
| IAN WALLACE, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Missouri State prisoner Anthony Curtis Moore's first amended petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 ("§ 2254 Petition"). The matter is fully briefed and ready for disposition.

On April 26, 2007, Petitioner was convicted after a bench trial in the Circuit Court of the City of St. Louis, Missouri, of two counts of murder in the first degree in connection with the suffocation deaths of his children. Petitioner was sentenced on May 25, 2007, to two concurrent terms of imprisonment of natural life without probation and parole. Petitioner's convictions and sentences were affirmed on appeal. *State v. Moore*, 264 S.W.3d 657 (Mo. App. 2008). Petitioner thereafter filed a motion for post-conviction relief pursuant to Missouri Supreme Court Rule 29.15, which was denied as untimely filed. The Missouri Supreme Court affirmed the denial of Petitioner's post-conviction motion as time-barred. *Moore v. State*, 328 S.W.3d 700 (Mo. 2010).

Petitioner is currently incarcerated at the Southeast Correctional Center in Charleston, Missouri. Petitioner filed a pro se petition for writ of habeas corpus on June 18, 2010. (ECF No. 1). The Court appointed counsel to represent Petitioner on November 7, 2011 (ECF No. 25), and attorney Kevin L. Schriener filed the instant § 2254 Petition on Petitioner's behalf on May 23, 2012.

(ECF No. 37). In his § 2254 Petition, Petitioner raises the following six claims for relief:

(1) That the trial court erred in overruling Petitioner's motion for judgment of acquittal, as there was insufficient evidence to refute Petitioner's affirmative defense of not guilty by reason of mental disease or defect;

(2) That the trial court erred in admitting evidence of Petitioner's post-offense conduct on the issue of his mental health;

(3) That Petitioner received ineffective assistance of counsel, in that trial counsel failed to call a neurologist to testify regarding the presence and import of a bilateral frontal subdural hematoma discovered in a CT scan taken just after the incident;

(4) That Petitioner received ineffective assistance of counsel, in that trial counsel failed to present evidence regarding additional mental health treatment Petitioner may have received after the offenses and while in custody;

(5) That Petitioner received ineffective assistance of counsel, in that trial counsel failed sufficiently to advise Petitioner regarding his right to a jury trial; and

(6) That Petitioner received ineffective assistance of counsel, in that appellate counsel failed to challenge on appeal the trial court's improper admission of hearsay evidence during trial.

(§ 2254 Petition, PP. 5-32). The Court will address the claims in turn.

## DISCUSSION[1]

**I. Ground 1**

As stated above, in Ground 1 of his petition Petitioner asserts the trial court erred in overruling Petitioner's motion for judgment of acquittal, as there was insufficient evidence to refute Petitioner's affirmative defense of not guilty by reason of mental disease or defect. (§ 2254 Petition,

---

[1] Respondent devotes a portion of his response to arguing (1) that Petitioner's § 2254 Petition is barred by the applicable statute of limitations, and (2) that a number of Petitioner's claims are procedurally barred for failure to present the claims to the state courts. (Respondent's Response, PP. 10-18). Questions of procedural default and timeliness do not present jurisdictional bars to this Court's review, however, and so in the interest of judicial economy, the Court will proceed to the merits of Petitioner's claims. *See Trussell v. Bowersox*, 447 F.3d 588, 590-91 (8th Cir. 2006) (citing *Day v. McDonough*, 547 U.S. 198, 126 S.Ct. 1675, 1681-82, 164 L.Ed.2d 376 (2006); *Barrett v. Acevedo*, 169 F.3d 1155, 1162 (8th Cir. 1999) (en banc)).

PP. 5-13). Specifically, Petitioner faults the trial judge for finding that Petitioner acted with knowing deliberation, despite the testimony of two expert witnesses that Petitioner was not responsible for the deaths of his children. Petitioner raised this claim on direct appeal of his convictions, and after reciting the background facts of the case in detail the Missouri Court of Appeals denied the claim as follows:

> In his first point on appeal, Defendant[2] claims the trial court erred in denying his motions for judgment of acquittal because the defense established by a preponderance of the evidence that Defendant lacked responsibility for his actions because he suffered from a mental disease at the time of the charged criminal conduct.
>
> *Expert Witness Testimony*
>
> Dr. Bruce Harry, a forensic psychiatrist hired by the defense, examined Defendant approximately one year after the deaths of Toni and Kanyé. In Dr. Harry's opinion, Defendant suffered from Psychotic Disorder Not Otherwise Specified when he killed his children. Dr. Harry concluded that, as a result of this condition, Defendant was not able to appreciate the nature, quality, and wrongfulness of his actions at the time of the crimes.
>
> Dr. Harry based his conclusion that Defendant suffered from a temporary psychotic disorder on Defendant's: 1) disorganized speech; 2) disorganized behavior, which included foaming at the mouth and wandering around; 3) commission of the crimes during daylight and in plain sight; 4) failure to try to clean himself; 5) characterization as "OBS violent" by law enforcement and the police officers' request for a CIT officer, an officer specialized in working with mentally ill individuals in severe distress; 6) refusal to yield to uniformed law enforcement officers in the face of lethal cover and threat of Taser application; and 7) almost immediate receipt of antipsychotic medication from EMS. Dr. Harry weighed these factors against those indicating that Defendant was able to understand the nature, quality, and wrongfulness of his actions, which included the following facts: 1) Defendant mostly submerged the children in the mud; 2) Defendant left the scene; 3) prior to his arrest, Defendant reportedly told one of his sisters, "She's dead"; and 4) upon being informed that his children were dead, Defendant responded, "I know." Dr. Harry concluded that these factors suggesting sanity and deliberation did not outweigh those indicating that Defendant suffered from a mental disease or defect excluding responsibility.

---

[2] Petitioner is referred to as "Defendant" by the Missouri Court of Appeals.

On cross-examination, Dr. Harry acknowledged that his "balancing test" did not take into account certain factors that suggested Defendant understood his actions. Dr. Harry admitted that the numerous steps Defendant took in committing the crimes—such as driving down the boat ramp, getting out of the car, carrying the children to the front of the vehicle, putting them down in the mud, and holding their faces in the mud—could indicate that Defendant knew what he was doing and had a plan and a purpose. Dr. Harry also conceded the possibility that Defendant manifested the psychotic behavior after committing the crimes. In other words, Defendant's psychotic behavior might have been triggered by the trauma of killing his children.

Dr. John Rabun, a forensic psychiatrist appointed by the court upon the State's motion for mental examination, also testified. Dr. Rabun performed his evaluation approximately two years after the crimes were committed. Like Dr. Harry, Dr. Rabun found that Defendant did not exhibit any signs of a mental disease or defect before he committed the crimes or at the time of his examination, and he concluded that Defendant suffered from Psychotic Disorder Not Otherwise Specified for the brief period of time during which he killed his children. On cross-examination, Dr. Rabun also acknowledged the possibility that Defendant knew at the time of the murders that his actions were wrong and then suffered a psychotic disorder caused by the trauma of killing his children.

Section 552.030.1 provides that a "person is not responsible for criminal conduct if, at the time of such conduct, as a result of mental disease or defect such person was incapable of knowing and appreciating the nature, quality, or wrongfulness of such person's conduct." Mo.Rev.Stat. § 552.030.1 (2008). Section 552.030.6 provides that:

> All persons are presumed to be free of mental disease or defect excluding responsibility for their conduct.... The issue of whether any person had a mental disease or defect excluding responsibility for such person's conduct is one for the trier of fact to decide upon the introduction of substantial evidence of lack of such responsibility.... Upon the introduction of substantial evidence of lack of such responsibility, the presumption shall not disappear and shall alone be sufficient to take to the trier of fact.

Mo.Rev.Stat. § 552.030.6 (2008). The statute makes clear that when an individual commits a crime, the legal presumption of sanity is very strong. *See e.g., State v. Bradshaw,* 593 S.W.2d 562, 568 (Mo.App. W.D. 1979).

A successful insanity defense requires a defendant to first present substantial evidence that he lacked responsibility for the offense because he suffered from a mental disease or defect at the time of the offense. *State v.*

> *Bass,* 81 S.W.3d 595, 615 (Mo.App. W.D. 2002). Assuming the defendant satisfies this burden, he must then overcome the statutory presumption of sanity by showing by a preponderance of the evidence that he suffered from a mental illness that precluded him from appreciating the nature, quality, or wrongfulness of his criminal conduct. Id. The presumption that a defendant is free from mental disease or defect remains throughout the proceeding and alone is enough to sustain a finding of sanity even when a defendant presents substantial evidence to the contrary. *Bradshaw,* 593 S.W.2d at 568.
>
> Even where a defendant presents substantial and uncontroverted evidence of a mental disease, a trial court is not required to grant a judgment of acquittal. The trial court is free to accept or reject Defendant's evidence of mental disease or defect. *State v. Bell,* 798 S.W.2d 481, 487 (Mo.App. S.D. 1990). As previously stated, in the absence of expert testimony that a defendant was not suffering from a mental disease or defect excluding responsibility at the time of the crime, the statutory presumption of sanity standing alone is substantial evidence to sustain a court's finding on this issue. *State v. Lee,* 654 S.W.2d 876, 881 (Mo. banc 1983).
>
> A review of the record persuades us that there was substantial evidence in this case for the court to find Defendant was not suffering from a mental disease or defect excluding responsibility when he killed his children. Defendant's family stated that Defendant was behaving normally and enjoying time with his children before he left their house at 11:00 a.m. Between the hours of 11:00 a.m. and 3:00 p.m., Defendant made various phone calls during which he spoke appropriately and coherently. Defendant's medical records indicate that, upon his admission to Forest Park Hospital that afternoon, Defendant was oriented as to time, place, and person. Furthermore, the State's cross-examination of Defendant's medical experts revealed that their diagnoses were based primarily upon witnesses' observations of Defendant after he killed his children. Both medical experts acknowledged the possibility that Defendant knew at the time he was killing his children that his actions were wrong and then behaved in a disorganized manner as a result of the trauma of having killed his children. Thus, the trial court did not err in holding that Defendant's evidence was insufficient to rebut the legal presumption of sanity and denying Defendant's motions for judgment of acquittal. Defendant's first point is denied.

*State v. Moore*, 264 S.W.3d at 661-63.

With respect to federal court review of state court conclusions, 28 U.S.C. §2254 states in pertinent part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any

claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254 (d).

Upon review, this Court finds that the Missouri court's affirmance of Petitioner's convictions and sentences did not result in a decision contrary to federal law. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (citation omitted) (In reviewing a claim of insufficient evidence, the court must determine whether, "after considering the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt"). Further, the Court's review of the record does not demonstrate that the Missouri court's decision was based on an unreasonable determination of the facts in light of the evidence presented. In the instant case, while two testifying psychiatrists ultimately concluded Petitioner was suffering from an unspecified psychiatric disorder at the time of the offenses, they both acknowledged that some of Petitioner's behaviors were consistent with his understanding the wrongfulness of his acts. For example, Dr. Harry testified that the fact that Petitioner attempted to bury the children suggested he knew something was wrong at the time. (Resp. Exh. A, PP. 137-38). He further noted that when he examined Petitioner months later, Petitioner exhibited no symptoms of psychosis, and there was no indication Petitioner had experienced any episodes other than the one involving his children. (Id., PP. 141, 184). On cross-examination, Dr. Harry acknowledged that his diagnosis, psychotic disorder not otherwise specified, is given when a psychiatrist has inadequate information to render a different or more specific

opinion. (Id., P. 154). Finally, he conceded that Petitioner's actions in driving to the boat ramp, the site of the killings, in the first place, and then removing the children from the car, could indicate premeditation. (Id., PP. 195-96).

The second psychiatrist, Dr. Rabun, testified that he had tried without success to understand what brought on Petitioner's behavior, and that Petitioner had been free of symptoms since the incident. (Resp. Exh. A, PP. 225-26). When the trial judge asked Dr. Rabun how he knew that Petitioner had not acted "rationally but angrily" with his children, and then suffered psychosis only after the trauma of their killings, he acknowledged that he could not say. (Id., P. 257). Finally, while adhering to his conclusion regarding Petitioner's mental state, Dr. Rabun acknowledged that the opposite conclusion could also be drawn from the evidence. (Id., PP. 259-60).

In light of these circumstances, the Court finds that despite the experts' conclusions to the contrary, a reasonable trier of fact could find that Petitioner acted with deliberation, and was not under the influence of a mental disease or defect at the time of the offenses. The trial judge's finding therefore was not based on insufficient evidence under federal law, and Ground 1 of Petitioner's petition will be denied.

## II. Ground 2

As stated above, in Ground 2 of his petition Petitioner asserts the trial court erred in admitting evidence of Petitioner's post-offense conduct on the issue of his mental health. (§2254 Petition, PP. 14-18). Specifically, Petitioner claims the trial court erred in considering evidence of his mental state months after his children were suffocated, as this evidence was irrelevant to the determination of his mental state at the time of the deaths. Petitioner raised this claim on direct appeal of his convictions, and the Missouri Court of Appeals denied the claim as follows:

> In his second point on appeal, Defendant claims the trial court erred in overruling defense counsel's objections to the admission of evidence that

Defendant was not psychotic one to two months after he suffocated his children. Specifically, Defendant asserts that he was prejudiced by testimony given by the victims' mothers stating that they spoke to Defendant by telephone in the months after the murders and Defendant was able to have coherent conversations with them.

As a general matter, the trial court enjoys considerable discretion in the admission or exclusion of evidence. *State v. Gonzales,* 153 S.W.3d 311, 312 (Mo. banc 2005). In addition, we review the trial court's ruling "for prejudice, not mere error, and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial." *State v. Forrest,* 183 S.W.3d 218, 223–24 (Mo. banc 2006), *quoting State v. Middleton,* 995 S.W.2d 443, 452 (Mo. banc 1999).

The key inquiry when a defendant claims that he is not guilty by reason of insanity is "whether there existed substantial evidence of defendant's mental irresponsibility at the time of the homicides." *State v. Carr*, 687 S.W.2d 606, 610 (Mo.App. S.D. 1985). Any facts that would tend to establish Defendant's mental state at the time of the crimes charged may be relevant. *See e.g., State v. Raine,* 829 S.W.2d 506, 510–11 (Mo.App. W.D. 1992). The law does not limit the period of time that an inquiry into defendant's mental condition may cover. *State v. Jackson,* 346 Mo. 474, 142 S.W.2d 45, 48 (1940); *see also State v. Whitener,* 329 Mo. 838, 46 S.W.2d 579, 581 (1932) ("Evidence of [defendant's] conduct and condition before, at the time of, and subsequent to the doing of the thing charged is admissible to enable the jury to arrive at a proper conclusion as to the defendant's mental status at the time he did the thing complained of."). In the instant case, the testimony of Ms. Jones–Phillips and Ms. Anderson was relevant to the principal issue in the case—namely, whether Defendant suffered from a mental disease or defect at the time he committed the crimes charged.

Defendant relies on *State v. Brizendine* for the proposition that evidence of a defendant's mental condition after a crime is committed is inadmissible. 391 S.W.2d 898, 901–2 (Mo. 1965). In *Brizendine,* the Supreme Court held that the record did not establish insanity or mental irresponsibility. *Id.* at 902. The Court reviewed the record, which included the report of an examining psychiatrist, and found that "[n]o witnesses testified in connection with their observations before, at or after the commission of the homicide that defendant lacked the requisite mental capacity to commit the crime." *Id.* at 900, 902. The Court did not, as Defendant claims, hold that evidence of the defendant's mental condition after the crime was inadmissible. Rather, the Court considered this evidence and determined that it did not establish insanity or mental irresponsibility. *Id.* at 902. Moreover, when considering whether the defendant was entitled to a jury instruction on his insanity defense, the Court considered evidence of the defendant's "unusual conduct before, during and after the killing." *Id.*

at 902–03.

> Clearly, Defendant's mental condition and ability to maintain a coherent conversation weeks or months after the crimes is not determinative of his mental state at the time of his criminal conduct. However, such evidence is relevant to determining whether Defendant suffered any continuing, permanent mental incapacity that would relate to the time of the homicides. *See e.g., Brizendine,* 391 S.W.2d at 902. Thus, the testimony of the victims' mothers was logically relevant to the issue of Defendant's mental state at the time he committed the charged offenses.
>
> Furthermore, Defendant was not prejudiced by the testimony in question because his mental condition following the murder was the subject of extensive examination during the testimony of Defendant's own witnesses. "Generally, a party cannot complain about the admission of testimony over his objection, where evidence of the same tenor has been admitted without his objection." *State v. Griffin,* 876 S.W.2d 43, 45 (Mo.App. E.D. 1994). Drs. Harry and Rabun both testified, without objection, that Defendant did not exhibit any psychotic or disorganized behavior at the time they conducted their examinations; Defendant had suffered no relapses since the murders; Defendant was coherent at the hospital following the murders; and Defendant had not received any psychiatric treatment or psychotropic drugs since the paramedics administered Haldol and Ativan on the day of the murders. Both psychiatrists made clear that, in their opinions, Defendant suffered a psychotic disorder for only a few hours. Thus, we conclude that the trial court did not err in admitting Ms. Jones–Phillips' and Ms. Anderson's testimony regarding Defendant's behavior in the months after the murders. Defendant's second point is denied.

*State v. Moore*, 264 S.W.3d at 663-64.

As stated above, with respect to federal court review of state court conclusions, 28 U.S.C. §2254 states in pertinent part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254 (d).

Whether evidence is properly admitted is a question of state law that is not reviewable in a federal habeas proceeding unless a specific constitutional right has been infringed, or the evidence is so prejudicial as to deny due process. *Carter v. Armontrout*, 929 F.2d 1294, 1296 (8th Cir. 1991). The federal court must find more than trial error or even plain error to warrant habeas relief on the basis of an evidentiary ruling. *McCafferty v. Leapley*, 944 F.2d 445, 452 (8th Cir. 1991), *cert. denied*, 503 U.S. 911 (1992). "An evidentiary error violates a defendant's due process rights only when the error complained of is so gross, conspicuously prejudicial, or otherwise of such magnitude that it fatally infects the trial." *Id.* (citations omitted).

Upon consideration, this Court finds the evidence admitted by the trial court was not so prejudicial that it denied Petitioner due process, for two reasons. First, as noted above both psychiatrists acknowledged the brief nature of Petitioner's alleged psychotic break, and testified that upon examination months later Petitioner no longer exhibited any symptoms of the disorder. (Resp. Exh. A, PP. 141, 184, 226). Thus, evidence presented by Petitioner similarly indicated that the alleged psychotic episode was of short duration. Further, as noted by Respondent, there is no indication in the oral or written findings that the trial court based its conclusion regarding Petitioner's mental state at the time of the offenses in any way on the testimony of the victims' mothers. Under these circumstances, there was no "gross" or "conspicuously prejudicial" error that denied Petitioner due process of law. Ground 2 is denied.

### III. <u>Ground 3</u>

As stated above, in Ground 3 of his petition Petitioner asserts he received ineffective assistance of counsel, in that trial counsel failed to call a neurologist to testify regarding the presence and import of a bilateral frontal subdural hematoma discovered in a CT scan taken just after the

incident. (§2254 Petition, PP. 18-22).[3] Petitioner maintains such testimony would have supported the psychiatrists' conclusion that Petitioner was suffering from a mental illness at the time he killed his children.

Under federal law, in order to prevail on his ineffective assistance of counsel claim, Petitioner must show that his attorney's performance was "deficient," and that the deficient performance was "prejudicial." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. To overcome this presumption, Petitioner must prove that, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.*

Even if Petitioner satisfies the performance component of the analysis, he is not entitled to relief unless he can prove sufficient prejudice. *Id.* at 694. To do so, Petitioner must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

Upon consideration the Court finds that with this claim, Petitioner fails to satisfy either prong of the *Strickland* test. With respect to deficient performance, the Court notes that while both psychiatrists mentioned the hematoma in their reports, neither recommended that any follow-up be performed to assess its potential connection to Petitioner's mental state. Further, with the benefit of two separate psychiatrists willing to testify that Petitioner was suffering from a mental disease or

---

[3] Dr. Rabun noted that a later CT scan did not show any sign of this abnormality. (Resp. Exh. E, P. A51).

defect at the time of the offenses, the Court cannot find that Petitioner's attorney's decision not to seek further favorable medical testimony fell "outside the wide range of professionally competent assistance" sanctioned by *Strickland*. *Id.* at 690.

Furthermore, the Court finds that with this claim Petitioner fails to establish the requisite prejudice. In other words, Petitioner offers no evidence a neurologist would have testified that the hematoma, which apparently did not appear on later performed CT scans, influenced either his mental state or his actions on the day in question. Under these circumstances, the Court finds Petitioner fails to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," and so Ground 3 must be denied. *Strickland*, 466 U.S. at 694.

## IV.  Ground 4

As stated above, in Ground 4 of his petition Petitioner asserts he received ineffective assistance of counsel, in that trial counsel failed to present evidence regarding additional mental health treatment Petitioner may have received after the offenses and while in custody. (§ 2254 Petition, PP. 22-25). Specifically, Petitioner maintains his attorney should have summoned witnesses to testify that, "on information and belief," Petitioner was placed in a mental health unit after his arrest, and received mental health treatment from a Dr. Sadiky, and Misty Clemons.

Upon consideration, the Court again finds that with this claim, Petitioner fails to satisfy either *Strickland* prong. With respect to performance, the Court notes that Petitioner himself reported to Dr. Rabun that he had not received any psychiatric care while in jail. (Resp. Exh. E, P. A51). Thus, despite Petitioner's current claim that "on information and belief" he received such care, trial counsel had no duty to investigate alleged care of which he was never made aware.

As for prejudice, as noted by Respondent Petitioner gives absolutely no indication as to the

nature of the treatment he received, or any conclusions reached by the alleged providers. Under these circumstances, the Court cannot find that but for counsel's alleged error, the result of the proceeding would have been different. Ground 4 is denied.

## V.     Ground 5

As stated above, in Ground 5 of his petition Petitioner asserts he received ineffective assistance of counsel, in that trial counsel failed sufficiently to advise Petitioner regarding his right to a jury trial. (§ 2254 Petition, PP. 25-29). By way of background, Petitioner filed a written request to waive his right to a jury prior to trial. (Resp. Exh. A, P. 7). The trial judge questioned Petitioner extensively regarding this decision, and the following colloquy took place on the record:

> THE COURT:  And he [Petitioner's attorney, Mr. Jeff Estes] just handed me a memo which (sic) what appears to be your signature. He told me you did sign this where you are wanting to waive your right to a jury trial in this matter?
>
> DEFENDANT:  Yes, ma'am.
>
> THE COURT:  And is that your signature?
>
> DEFENDANT:  Yes, ma'am.
>
> THE COURT:  Is that what you want to do?
>
> DEFENDANT:  Yes, ma'am.
>
> THE COURT:  Do you understand you have a constitutional right to a trial by a jury under our United States Constitution and our Missouri Constitution?
>
> DEFENDANT:  Yes, ma'am.
>
> THE COURT:  And do you understand that's a very important right that you have?
>
> DEFENDANT:  [No response.]
>
> THE COURT:  Yes?

| | |
|---|---|
| DEFENDANT: | Yes, ma'am. |
| THE COURT: | Why have you decided to waive your right to that jury trial? |
| DEFENDANT: | Because it was in the best interest of my lawyer that I do that--that I have a bench trial. |
| THE COURT: | But you understand that even if he told you, or gave you his advice that it was in your best interest, you still would have a right to ask me for a jury trial? Do you understand? |
| DEFENDANT: | Yes, ma'am. |
| THE COURT: | And do you want a jury trial in this matter? |
| DEFENDANT: | No. |
| THE COURT: | In other words, you have to knowingly understand your rights, and you knowingly waive them. Do you understand? |
| DEFENDANT: | Yes, ma'am. |
| THE COURT: | So you're not--has Mr. Estes forced you or coerced you or said that you can't have a jury trial no matter whether you want one or not? |
| DEFENDANT: | No, ma'am. |
| THE COURT: | Okay. Is it your desire--your personal desire--not to have a jury? |
| DEFENDANT: | Yes, sir--I mean, yes, ma'am. |
| THE COURT: | Okay. The Court will accept the defendant's written and his verbal waiver of his right to a jury trial. The Court finds that he does understand his constitutional right to a jury trial and finds that he is knowingly and voluntarily waiving that right.<br>And again, Mr. Moore, just so that I can be sure, even though your lawyer advised you that he thought it was best for you not to do it, do you understand you could still have a jury trial if you want one? |
| DEFENDANT: | Yes, ma'am. |

(<u>Id.</u>, PP. 8-10).

The Eighth Circuit has held that, "'[s]olemn declarations in open court carry a strong presumption of verity.'" *Smith v. Lockhart*, 921 F.2d 154, 157 (8th Cir. 1990) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977)). This Court thus finds that Petitioner waived his right to a jury trial in a knowing and voluntary manner. Under these circumstances, Petitioner fails to establish the requisite prejudice under *Strickland*; in other words, he fails to demonstrate that absent his attorney's alleged error, he would have insisted on proceeding before a jury. Ground 5 will therefore be denied.

## VI. Ground 6

As stated above, in Ground 6 of his petition Petitioner asserts he received ineffective assistance of counsel, in that appellate counsel failed to challenge on appeal the trial court's improper admission of hearsay evidence during trial. (§ 2254 Petition, PP. 29-32). Specifically, Petitioner complains that the trial court improperly received evidence that Petitioner stated, "she's dead," shortly after the death of his children, when the statement was taken from Petitioner's police report without testimony from the alleged witness to the statement.

Upon consideration, the Court again finds Petitioner fails to establish prejudice under *Strickland*. Specifically, the Court notes that the statement at issue was referenced in Dr. Harry's report, which was introduced into evidence by Petitioner, not the State. (Resp. Exh. D, P. 62; Resp. Exh. A, P. 133). "'[A] defendant may not take advantage of self-invited error nor complain about matters he himself brings into the case.'" *Crenshaw v. Dormire*, 2006 WL 473535, at *4 (E.D. Mo. Feb. 24, 2006) (quoting *State v. Uka*, 25 S.W.3d 624, 626 (Mo. App. 2000)). Under these circumstances, the Court finds any claim that it was error to admit and consider the statement would have been denied on appeal, and so Petitioner's final claim of ineffective assistance of counsel must fail. Ground 6 is denied.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner's First Amended Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (ECF No. 37) is **DENIED**, and his claims are **DISMISSED** with prejudice. A separate Order of Dismissal will accompany this Memorandum and Order.

**IT IS FURTHER ORDERED** that because Petitioner cannot make a substantial showing of the denial of a constitutional right, the Court will not issue a certificate of appealability. See *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997), *cert. denied*, 525 U.S. 834 (1998).

Dated this 26th day of March, 2013.

/s/Jean C. Hamilton
UNITED STATES DISTRICT JUDGE